**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NIELSEN CONSUMER LLC,<br>Plaintiff,<br><br>v.<br><br>CIRCANA, LLC,<br>Defendant. | Civil Action No.: 1:24-cv-08491<br><br>Judge: Hon. Steven C. Seeger |

# PLAINTIFF NIELSEN CONSUMER LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL

THOMPSON COBURN LLP
Michael A. Parks, Il. Bar No. 6217230
Sartouk H. Moussavi, Il. Bar No. 6313554
Brendan M. Bement, Il. Bar No. 6338045
55 E. Monroe Street, 37th Floor, Chicago, Illinois 60603
P: (312) 346-7500, F: (312) 580-2201
mparks@thompsoncoburn.com
smoussavi@thompsoncoburn.com
bbement@thompsoncoburn.com

Matthew A. Braunel, Il. Bar No. 6276394
Justin P. Mulligan, Il. Bar No. 6319388
One US Bank Plaza, St. Louis, MO 63101
P: (314) 552-6000, F: (314) 552-7000
mbraunel@thompsoncoburn.com
jmulligan@thompsoncoburn.com

KELLOGG HANSEN TODD FIGEL & FREDERICK PLLC
John Thorne (*pro hac vice*)
James M. Webster (*pro hac vice*)
Joseph S. Hall (*pro hac vice*)
1615 M Street, NW, Suite 400, Washington, DC 20036
P: (202) 326-7900, F: (202) 326-7999
jthorne@kellogghansen.com
jwebster@kellogghansen.com
jhall@kellogghansen.com

*Attorneys for Plaintiff Nielsen Consumer LLC*

# Table of Contents


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. NIQ's TDLinx Data ........ 2

B. The Parties' Business Relationship and their Agreement. ........ 2

C. Circana's Misuse of NIQ's TDLinx Data. ........ 3

D. Custodial ESI vs. Noncustodial ESI. ........ 3

III. CURRENT DISCOVERY DISPUTE ........ 4

A. Dispute Background ........ 4

B. The Custodial ESI Protocol was to assist with custodial ESI, not to eliminate or delay production of noncustodial ESI. ........ 6

C. Circana's noncustodial documents are especially critical in this case. ........ 8

D. NIQ's Go-Get Requests are targeted, discrete, probative, and the types of documents more likely found in noncustodial, as opposed to custodial, sources. ........ 9

E. Circana refuses to produce any noncustodial ESI now, and maybe ever. ........ 10

IV. ARGUMENT ........ 10

A. Circana must produce noncustodial documents without further delay. ........ 10

1. Noncustodial documents are proportional to the needs of this case. ........ 10

2. Rules 26 and 34 require Circana to timely produce noncustodial documents. ........ 11

3. The Custodial ESI Protocol does not obviate Circana's discovery obligations. ........ 12

4. Circana must produce responsive documents of which it is aware. ........ 14

V. RELIEF REQUESTED AND CONCLUSION ........ 15

# Table of Authorities

**Cases** **Page(s)**

*DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 926-27 (N.D. Ill. 2021) ............................. 11, 12, 13, 15

*Fid. Nat'l. Title Ins. Co. of New York v. Intercounty Nat'l. Title Ins. Co.*, 2002 WL 1433584 (N.D. Ill. July 2, 2002) ............................... 10, 11, 12, 15

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 477 (N.D. Ill. 2006) ............................................ 10, 12

*In re Loc. TV Advert. Antitrust Litig.*, No. 18 C 6785, 2023 WL 5659926 (N.D. Ill. Aug. 31, 2023) .......... 13

**Other Authorities**

Fed. R. Civ. P. 26 ......................................................... *passim*

Fed. R. Civ. P. 34 ......................................................... 5, 11, 12, 14

Fed. R. Civ. P. 37 ......................................................... 10, 18

## I. INTRODUCTION

This lawsuit alleges Defendant Circana, LLC misused data it received from Plaintiff Nielsen Consumer LLC ("NIQ") under an agreement that permitted only an exceedingly narrow use of that data, and expressly prohibited use of that data in a manner that competed with NIQ.

Germane to this motion, NIQ's electronic delivery of its robust datasets to Circana was not to one individual at Circana, nor was it by email – it was uploaded to a secure file transfer portal (FTP). [redacted] In other words, NIQ's data, and direct evidence of Circana's use of that data, resided in Circana's "noncustodial" sources, as opposed to its "custodial" sources, and searching them is proportional to the needs of the case. Yet, Circana is improperly refusing to produce *any* noncustodial ESI now, and maybe ever.

NIQ served requests for production on October 23, 2024 and in the subsequent months, the parties negotiated a protocol for dealing with custodial ESI. Circana has since taken the agreement regarding the protocol for <u>custodial</u> ESI to argue that Circana need not timely produce <u>noncustodial</u> ESI. According to Circana, for NIQ to receive any noncustodial ESI, the custodial discovery must first be completed in full; only then will Circana consider searching for any noncustodial ESI, and that is only if Circana determines "discrete categories of sets of documents [] are not sufficiently covered by the custodial review." Circana refuses to budge, even though there is no basis for its position under the Federal Rules and NIQ never agreed to it. Circana's position is especially problematic, given the particular importance of noncustodial ESI from Circana in this case.

For the reasons stated herein, NIQ requests the Court: (1) find that there is no bifurcation between custodial and noncustodial discovery; (2) compel Circana to produce within 30 days the documents responsive to NIQ's "Go-Get Requests" (*see* § III.D. below); and (3) clarify that if Circana or its representatives are aware of responsive documents, Circana must produce them.

## II. FACTUAL BACKGROUND

### A. NIQ's TDLinx Data

The data at issue in this case is NIQ's TDLinx data. At a high level, the TDLinx data is a comprehensive dataset that provides detailed information for hundreds of thousands of retail stores across the United States (*e.g.* grocery stores, convenience stores, pharmacies, etc.). Such data includes attributes like store name, address, geolocation, annual sales volume, square footage, number of checkout registers, ownership hierarchy, supplier information, classifications for trade channels, and a unique identifier known as a "TDLinx Code." The TDLinx data is continuously updated to reflect real-time changes (*e.g.* store openings/closings, ownership changes, etc.), giving businesses up-to-date information to use in their strategic decision making. Retailers and manufacturers license TDLinx data for many different reasons, including: to assess market coverage; identify growth opportunities and emerging trends; understand the competitive landscape; optimize sales territories; logistics and distribution planning; resource allocation; geographic-based promotions; and many others. TDLinx is also the foundational dataset underpinning several NIQ core offerings, including to identify stores in its consumer segmentation and targeting products/services and to generate market share projections and estimates through NIQ's retail measurement services. In sum, NIQ's TDLinx data is a critical tool for businesses in the retail environment (*e.g.*, consumer packaged goods (CPG) manufacturers, retail chains, etc.).

### B. The Parties' Business Relationship and their Agreement.

In 2005, NIQ and Circana[1] each provided their respective clients insights into consumer behavior and retail performance. At the time, some clients that licensed TDLinx data from NIQ also licensed or purchased retail data analytic products/services from Circana. As a result, the

[1] At the time, Circana was known as Information Resources, Inc. ("IRI").

parties entered into an agreement wherein [redacted]

[redacted]

**C. <u>Circana's Misuse of NIQ's TDLinx Data.</u>**

NIQ filed the present lawsuit because it came to believe that Circana used NIQ's TDLinx data in a manner plainly outside the scope of the limited license and in ways expressly prohibited by the Agreement. Though there is still much to be learned about the full scope of Circana's misuse as discovery continues, Circana appears to have already admitted some misuse in a recent discovery response. Indeed, Circana recently admitted that [redacted][3] These are impermissible uses and thus admissions by Circana of misuse of NIQ's TDLinx data.

**D. <u>Custodial ESI vs. Noncustodial ESI.</u>**

Generally speaking, electronically stored information, *i.e.* "ESI", can be divided into two types: custodial ESI and noncustodial ESI. *Custodial documents* are those collected and produced from the files of specific individuals (*i.e.* custodians), and are usually collected from the

[2] The 2005 agreement and its amendments are collectively referred to herein as the "Agreement".

[3] Highlights have been added to exhibits for ease of reference to relevant portions.

custodian's email mailbox, personal drives, laptops, and so forth. *Noncustodial documents* are those not tied to any single individual's files, but rather come from a shared source, such as a shared drive, company database, source code repository, company document repository, etc. It is well-accepted that both types of ESI are relevant and important in e-discovery. For example, according to the Sedona Conference, "[i]n assessing the scope of preservation duty, as soon as practicable, parties should consider persons likely to have relevant ESI, as well as non-custodial sources of relevant ESI," and "the organization should assess the persons likely to have relevant information, and the sources of non-custodial relevant information (such as structured systems and databases, and other non-custodial sources [])." The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1, 101-03 (2018) (emphases added).

## III. CURRENT DISCOVERY DISPUTE

NIQ files this motion because Circana is categorically refusing to produce noncustodial ESI at this time, and maybe ever. Circana's basis is the fallacy that the parties' agreed-upon protocol for custodial discovery ("Custodial ESI Protocol," ECF 114) somehow inhibits NIQ's ability to timely receive noncustodial ESI. Circana's attempt to root its flouting of the Federal Rules in the Custodial ESI Protocol is refuted by the language of the Custodial ESI Protocol itself. Moreover, Circana cannot feign surprise about NIQ's position, as NIQ repeatedly communicated it directly to Circana and proposed edits to the Custodial ESI Protocol to that effect, which Circana accepted. NIQ has attempted to address this matter with Circana for months in the hopes of avoiding Court intervention, but the parties are unfortunately at an irreconcilable impasse.

### A. Dispute Background

NIQ first served its requests for production on Circana on October 23, 2024. Circana served its responses on December 6, 2024. Ex. A-1. After finalizing the protocol for custodial discovery, NIQ sent a deficiency letter to Circana on February 19, 2025, seeking, among other things, clarity

on whether Circana was withholding documents based on certain objections. Ex. A-2. Circana's March 7 response letter dismissed NIQ's concern as "unfounded" and unilaterally asserted that any requests for noncustodial discovery "will come after the custodial productions and will therefore be specific and targeted," even though NIQ had never agreed to this departure from the Rules. Ex. A-3 at 2. The parties had a meet-and-confer on March 21, during which Circana agreed to produce noncustodial documents pursuant to "go-get" requests propounded by NIQ.[4] In NIQ's confirmatory email thereafter, NIQ reiterated that it would "follow up with its initial Go-Get requests shortly, and [looked] forward to receiving the supplemental responses to NIQ's discovery." Ex. A-4. In its response, Circana confirmed that it "agreed to consider any Go-Get requests, while preserving for the present time any objections we've raised," though it maintained that "the parties' Rule 26 and 34 obligations to produce responsive non-privileged documents are [] replaced by" the Custodial ESI Protocol. Ex. A-5.

A few days later, NIQ served a set of 10 narrow go-get requests. In the cover email, NIQ explained that "this case is not limited merely to emails and other documents from custodial sources," something "especially true in a case like this one that centers on allegations of misuse of NielsenIQ's proprietary data, including by the incorporation of that data into Circana's databases, systems, code, and the like." Ex. A-6. In response, Circana once again declared that "the purpose of the [go-get] procedure is to permit specific and targeted requests for documents *that were not captured in the custodial collection process*." Ex. A-7 (emphasis added).

On April 18, NIQ sent a detailed letter explaining much of what is at issue in this motion, including the purpose of the parties' custodial ESI protocol, the import of highly probative

[4] In addressing burden and proportionality, the parties agreed to the idea of "go-get" requests for documents less likely to fall within the custodial ESI collection. This could mean requesting noncustodial documents by identifying specific requests for production, or providing targeted "go-get" requests.

documents that would not be captured via custodial sources, and why Circana's refusal to produce noncustodial documents is improper. Ex. A-8. That letter also indicated NIQ's desire to reach an amicable resolution on this issue, but that, given Circana's positions, "the only reasonable interpretation … is that Circana intends to kick the can down the road as far as it can, perhaps hoping to run out the clock on producing the most probative, important documents in this case." *Id.* at 8-9. NIQ indicated that absent Circana's confirmation that it would produce documents responsive to NIQ's Go-Get Requests, Court intervention would be necessary. On April 25, Circana served its objections to NIQ's Go-Get Requests, restating its refusal to produce noncustodial ESI and again proclaiming the "go-get procedure" was only there "to supplement that custodial review process only insofar as necessary to retrieve specific, discrete documents or categories of documents that, due to their nature, fall outside the custodial review process." Ex. A-9 at 1. On May 1, 2025, the parties held another meet-and-confer to address Circana's refusal to produce noncustodial ESI responsive to NIQ's Go-Get Requests. Circana stated it was firm in its position to not produce noncustodial ESI because it was "premature." Despite NIQ stressing that the documents sought were unlikely to be in Circana's custodial production, Circana stated it could not be persuaded to change its stance.

### B. The Custodial ESI Protocol was to assist with custodial ESI, not to eliminate or delay production of noncustodial ESI.

In October 2024, the parties began discussing how the parties should handle custodial discovery. In a conference call on October 23, 2024 and then in a confirmatory email on October 25, Circana proposed "setting another conference to discuss custodians, search terms, and any other issues regarding the scope of custodial discovery so that the parties can begin collection." Ex. B-1 (emphasis added). In a November 6 email, NIQ responded in kind, stating "[p]lease let us know when you are available … to discuss custodians, search terms, and any other issues regarding

the scope of custodial discovery." Ex. B-2 (emphases added). On November 21, Circana sent an email providing its "summary of our proposal for custodial document review," which contained Circana's proposed custodial discovery procedure such as the number of custodians, procedure concerning adding custodians, presumptive limits on the number of email documents, and parameters regarding technology-assisted review. Ex. B-3 (emphases added). Shortly thereafter, the parties began exchanging drafts of a proposed custodial ESI protocol. Throughout those discussions and drafts, NIQ made it abundantly clear this protocol would be an agreement between the parties to assist in their collection and production of custodial documents, not govern the universe of document production in this case. This is reflected in NIQ's January 2, 2025 email:

> "We have also provided proposed edits more generally to help confirm what we believe to be both parties' understanding of the purpose of the agreement – that it helps guide a significant portion of the parties discovery efforts [*i.e.* custodial discovery] but does not replace the parties' obligations under the Federal Rules of Civil Procedure 26 and that the parties will work together to collect, review and produce non-privileged and responsive documents that may not otherwise be a captured by the Stipulated Protocol." Ex. B-4 (emphasis added).

The understanding that the Custodial ESI Protocol would assist with custodial ESI but not supplant the parties' discovery obligations is also reflected in edits sent to Circana on January 2, wherein NIQ removed the statement from the initial draft that the protocol would "govern" document production, and replaced it with "to assist" (*id.*).

> Plaintiff-Counterclaim Defendant Nielsen Consumer LLC d/b/a NielsenIQ and Defendant Circana, LLC, (together, the "Parties"), hereby stipulate and agree to this Stipulated Agreement Regarding the Review and Production of Electronically Stored Information ("Stipulated Protocol") ~~setting forth the specifications that shall govern document~~to assist in the collection, review and production of electronically stored information during discovery in the above-captioned action, pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure permitting the parties to specify the form or forms in which documents are to be produced.[1]

Further, NIQ included that "this stipulation does not replace the Parties' obligations" under the Federal Rules and that parties were still obligated to produce "documents and ESI from sources in the Party's possession … not otherwise captured by this Stipulated Protocol" (*id.*):

> 2. The Parties recognize that this Stipulated Protocol may not fully address the collection, review and production of all responsive Documents and ESI that the Requesting Party may otherwise be entitled to under Federal Rule of Civil Procedure 26 and that this stipulation does not replace the Parties' obligations under Federal Rule of Civil Procedure 26. ~~; t~~Therefore, the Parties expressly agree that discovery in this litigation is an iterative process and that parties shall meet and confer in good faith to collect, review and produce non-privileged and responsive

> Documents and ESI not otherwise captured by this Stipulated Protocol, either by ~~and to~~ revisinge, as necessary, the custodians, search terms, and presumptive caps as addressed below to the extent necessary or by collecting, reviewing and producing non-privileged and responsive documents and ESI from sources in the Party's possession, custody, or control not otherwise captured by this Stipulated Protocol. The Parties reserve all rights to seek Court intervention if they cannot reach an agreement on the production of responsive Documents and ESI or amendments to any of the terms of this Stipulated Protocol to the extent they believe such relief is necessary.

In a January 6 email, NIQ further stated: "as your email indicates, custodial review does not cover everything, especially certain categories of relevant documents." Ex. B-5. The changes NIQ proposed were accepted in substance by Circana and are reflected in the final Custodial ESI Protocol. Indeed, the text of the Custodial ESI Protocol provides that it is "to assist in the collection, review and production of [ESI]," that it "is meant to assist … the parties fulfill their primary obligations under Federal Rule of Civil Procedure 26 and to make the discovery process more efficient," but that it "does not wholly replace the Parties' obligations under Federal Rule of Civil Procedure." ECF 114 at 1-2 (emphases added).

Moreover, it is apparent on its face that the Custodial ESI Protocol was only meant to address custodial discovery, because it solely contemplates a procedure for discovery of custodial documents. Indeed, the "Discovery Procedure" section sets forth a process that, definitionally, can only apply to custodial discovery: (A) first custodians are identified and later agreed upon; then (B) search terms are provided to apply to those custodians' documents; and then (C) the documents of those custodians' are reviewed and produced. *See* ECF 114 at III(A)-(C). This, of course, does not mean that NIQ waived its right to receive noncustodial ESI or that its production should be delayed. It is clear from the communications, edits made to the drafts, and final text of the Custodial ESI Protocol, that NIQ never intended or agreed the Custodial ESI Protocol would be the "be-all, end-all" that obviates other obligations under the Federal Rules (*e.g.* noncustodial ESI).

**C. Circana's noncustodial documents are especially critical in this case.**

In view of the facts of this case, documents from Circana's noncustodial sources are potentially among the most important. In a trade secret misappropriation lawsuit, noncustodial discovery can be perhaps more important than custodial discovery, because evidence of misuse may reside in shared, system-level, or organization-wide sources not tied to any one person. In fact, here, as Circana has admitted in a verified interrogatory answer, [redacted]

[redacted] Noncustodial discovery is thus vitally important in this case, and the notion that Circana need not timely engage in it is an egregious disregard of its obligations.[5]

**D. <u>NIQ's Go-Get Requests are targeted, discrete, probative, and the types of documents more likely found in noncustodial, as opposed to custodial, sources.</u>**

Though NIQ served a larger set of requests for production in October 2024 and those requests remain pending, in April 2025, in the interest of good-faith cooperation and an effort to receive at least *some* noncustodial documents, NIQ served ten Go-Get requests seeking documents that were (1) undeniably probative to matters at issue in this case, and (2) more likely found in noncustodial sources. *See* NIQ's Go-Get Requests, attached hereto as Ex. D and incorporated by reference. For example, Circana stated in response to an interrogatory: [redacted]

Meaning, Circana has already identified a noncustodial source that contains highly relevant ESI. NIQ's Go-Get Request No. 4 merely requests those documents be produced. As another example, NIQ requested Circana produce just two (2) store reports. *See* Ex. D at No. 7. These, and the rest of the documents responsive to NIQ's Go-Get Requests are relevant, proportional to the needs of the case, originate from noncustodial sources, and should not be withheld.

[5] Custodial discovery is not expected to be completed before September 1, 2025, and thus far, Circana has produced only 2,118 documents. The fact discovery deadline in this case is October 31, 2025.

**E. Circana refuses to produce any noncustodial ESI now, and maybe ever.**

Circana's firmly entrenched position boils down to essentially this: NIQ is not entitled to any noncustodial ESI at this time; rather, NIQ is only entitled to custodial ESI, with noncustodial ESI a mere afterthought that Circana *possibly* will consider producing sometime after custodial discovery is completed, but only if it believes "discrete categories of sets of documents [] are not sufficiently covered by the custodial review." Ex. F. Circana's position not only violates the Federal Rules, but is also untenable and would lead to more discovery disputes.

## IV. ARGUMENT

Circana's reliance on the Custodial ESI Protocol to avoid producing noncustodial ESI is nothing more than pretext because the Custodial ESI Protocol does not permit circumvention of the Federal Rules. Circana's position is so unjustified that it smacks of self-interest rather than good faith operation within the discovery rules. As stated by the Advisory Committee and reiterated by the courts, "the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues[.]" *Fid. Nat'l. Title Ins. Co. of New York v. Intercounty Nat'l. Title Ins. Co*., 2002 WL 1433584 (N.D. Ill. July 2, 2002). "A party may file a motion to compel discovery under Rule 37 [] where another party fails to respond to a discovery request or where the party's response is evasive or incomplete." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 477, 449 (N.D. Ill. 2006). "A motion to compel discovery is granted or denied at the discretion of the trial court," and in so ruling, "courts have consistently adopted a liberal interpretation of the discovery rules." *Kodish*, 235 F.R.D. at 450.

**A. Circana must produce noncustodial documents without further delay.**

***1. Noncustodial documents are proportional to the needs of this case.***

To meet its obligations under the Federal Rules, a party must take reasonable and proportional steps to identify, preserve, and produce ESI from shared, system-level, and

organization-wide sources, just as it must with custodial data. *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 926-27 (N.D. Ill. 2021). Circana couches its position of a bifurcated timeline for custodial and noncustodial discovery under the guise of "avoid[ing] unnecessary duplication of the already sizable burden imposed by the discovery process in this case"[6] (*see* Ex. A-7) but that ignores what NIQ has repeatedly attempted to explain to Circana, *i.e.* that "discovery in this case is not limited to emails and other documents from custodial sources" because "this case centers on allegations of misuse of NIQ's proprietary data, including by the incorporation of that data into Circana's databases, systems, code, and the like." *See* Ex. A-8 at 3-4. Indeed, as NIQ explained, "[e]vidence related to such incorporation is perhaps more likely to be found in Circana's noncustodial sources than its custodial sources" (*id*. at 5), which is precisely what NIQ has sought through its Go-Get Requests.

***2. Rules 26 and 34 require Circana to timely produce noncustodial documents.***

"E-discovery is still discovery." *DR Distrib.*, 513 F. Supp. 3d at 923. And though, "[u]nquestionably, at times, ESI discovery can be complex," the "underlying principles of discovery do not change just because ESI is involved." *Id*. "Indeed, just like in the good old days, ESI document disclosure and discovery involve five fundamental steps: (1) identification, (2) preservation, (3) collection, (4) review, and (5) production." *Id.* (citations omitted). The principles of discovery apply equally to custodial and noncustodial ESI.

Circana is obligated under Federal Rules 26 and 34 to timely produce noncustodial documents, as "[j]ust like physical documents, ESI must be timely disclosed." *Id*. at 938. Courts have affirmed that it "is critical that the ESI be provided in initial disclosures or as early as possible

---

[6] Circana also states that because the parties supposedly agreed to a procedure in a different case involving different facts in a different jurisdiction, NIQ should be bound to that case's discovery protocol. At least as it relates to discovery procedures, that case has no bearing on this one.

in the litigation." *Id.* at 939 (citations omitted). Rule 26's "provisions are not optional," and it "is premised on the notion that timely disclosure of relevant information, even harmful evidence, promotes a speedy and just resolution of the dispute." *Fid. Nat'l.*, 2002 WL 1433584, at *6. Indeed, "[a] litigant with knowledge and possession of undisclosed documents has an affirmative obligation to review prior discovery responses, determine the documents' responsiveness, and seasonably produce those documents if responsive." *Id.* And "[i]f ESI does not fall within the scope of the required initial disclosures but is responsive to Rule 34 production requests, it must be produced within 30 days." *DR Distribs.*, 513 F. Supp. 3d at *939.

"Courts commonly look unfavorably upon significant restrictions placed upon the discovery process" and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450. There is no basis under Rules 26 or 34 for the concept of a bifurcated timeline between noncustodial and custodial ESI, nor have the parties here agreed to one. Further revealing the problem with Circana's position is that, here, noncustodial ESI could perhaps be equally if not more important than custodial ESI. Accordingly, "non-privileged, proportional, relevant and responsive ESI must be [timely] produced under Rule 34" by Circana. *See DR Distribs.*, 513 F. Supp. 3d at 940 n.46.

***3. The Custodial ESI Protocol does not obviate Circana's discovery obligations.***

Circana's attempt to evade its discovery obligations by employing the Custodial ESI Protocol as a tactic to delay or otherwise not produce noncustodial ESI should be rejected.

First, it is apparent from the parties' discussions, edits made to the Custodial ESI Order, and text of the final Custodial ESI Order submitted to the Court that there was never agreement between the parties that Circana could delay noncustodial discovery. *See* § III.B. If Circana hoped to accomplish such a departure from the Federal Rules, Circana should have expressly proposed the bifurcation it now seeks to unilaterally impose, but Circana did not do that. Whether it was a

tactical decision by Circana to negotiate a custodial ESI protocol in order to later argue such agreement meant there was also some tacit agreement on pushing all noncustodial ESI to the backburner, or if Circana merely thought that was the case, is ultimately immaterial. Either way, there was no agreement to radically alter the parties' discovery obligations. Circana's argument that the Custodial ESI Protocol shields it from timely producing noncustodial ESI has no basis in anything but an apparent desire to limit NIQ's visibility into Circana's misuse.

Furthermore, courts in this jurisdiction and others have held that discovery agreements "do not control whether [a party] has met its discovery obligations under the Federal Rules of Civil Procedure." *In re Loc. TV Advert. Antitrust Litig.*, No. 18 C 6785, 2023 WL 5659926, at *6 (N.D. Ill. Aug. 31, 2023). Indeed, even where document requests are "beyond the scope of the parties' agreement, the Court is not bound to enforce discovery agreements." *Id.* at 5. Moreover, Circana's suggestion that noncustodial discovery is only appropriate after custodial discovery is complete, and only then as a "supplement" for "discrete categories of sets of documents that are not sufficiently covered by the custodial review," is not tenable as a practical matter. Such an approach would inevitably lead to fights about whether a "discrete category" is "sufficiently covered", and further, could tempt Circana to withhold crucial documents under the pretense that "discrete categories" of those types of documents are already "sufficiently covered by the custodial review." But "[t]here is no rule that allows opposing counsel to determine disclosures and productions based upon what he thinks is important." *DR Distribs.* 513 F. Supp. 3d at 940 n.46. Ultimately, "[t]he disclosure and discovery rules exist to ensure that cases are not litigated in the dark." *Id.* at 939 (citations omitted). Circana's aversion towards noncustodial discovery raises alarming questions about what it may portend if Circana's position prevails.

### *4. Circana must produce responsive documents of which it is aware.*

The parties also have an apparent disagreement about a slightly different, but related, issue. That is, what are a party's obligations regarding responsive documents of which the party, or its attorneys, are aware exist, irrespective of the Custodial ESI Order or anything else?

As background, during the March 21 meet-and-confer, NIQ sought confirmation on something that should be noncontroversial: *i.e.* that if the parties, or their legal representatives, are (or become) aware of documents responsive to requests for production, the parties must produce those documents. During that meeting, Circana agreed with this basic principle. Thus, in a confirmatory email, NIQ wrote that it "appreciate[d] the acknowledgment" by Circana regarding this issue. Ex. A-4. To NIQ's surprise, Circana responded on March 28 stating that it now disagreed that it acknowledged the parties' Rule 26 and 34 obligations requiring it to produce responsive non-privileged documents of which Circana or its representatives are aware. Ex. A-5. In response, NIQ reminded Circana that "during our March 21 Meet and Confer, Circana's attorney Michael Mueller expressly agreed with our statement that if the Parties or their representatives already are, or become, aware of specific responsive and non-privileged documents, the Parties must produce them irrespective of the ESI Protocol." Ex. A-6. NIQ sought further clarity, stating:

> "it is not clear if Circana is now attempting to retreat from Mr. Mueller's acknowledgment of that position. Thus, as it relates to this specific issue, please clarify if Circana now disagrees with the belief that it must produce responsive documents of which it or its representatives are specifically aware." *Id.*

In response, Circana reaffirmed that it in fact *was* reversing its prior acknowledgment of that basic discovery principle, stating: "Mr. Mueller did not agree that Circana 'must' produce any documents of any kind, much less some indeterminate and unbounded set of documents outside the agreed-upon custodial review process." Ex. A-7. Circana further stated: "We trust that you are not seriously suggesting that Circana has an obligation to ask all of its employees if they are aware

of documents responsive to each of NielsenIQ's discovery requests—whether traditional RFPs or separate 'go-get' requests." *Id.* This hyperbolic framing misses the point – NIQ was seeking confirmation of the basic discovery principle that Circana and its attorneys must meet their discovery obligations and if, in so doing, Circana is (or becomes) aware of specific, identifiable documents responsive to NIQ's requests for production, the documents would be produced.

"A litigant with knowledge and possession of undisclosed documents has an affirmative obligation to review prior discovery responses, determine the documents' responsiveness, and seasonably produce those documents if responsive." *Fid. Nat'l.*, 2002 WL 1433584, at *6. Under the Federal Rules and the Rules of Professional Conduct, attorneys have a duty to "interview the client to obtain all relevant available information," and in so doing, "should maintain a healthy skepticism concerning a client's initial explanation of a case," even to the point where "[t]he client must be pushed, probed, even cross-examined to test the facts provided to counsel." *DR Distribs.* 513 F. Supp. 3d at 923-24 (citations omitted). Indeed, "[c]ounsel must interview [the relevant people] to learn the relevant facts regarding ESI and to identify, preserve, collect, and produce the relevant ESI." *Id.* at 927. Accordingly, NIQ also respectfully requests that the Court clarify that parties must produce responsive documents of which they or their attorneys are aware exist.

## V. RELIEF REQUESTED AND CONCLUSION

For the reasons stated herein, NIQ requests the Court: (1) find that there is no bifurcation between custodial and noncustodial discovery; (2) compel Circana to produce within 30 days the documents responsive to NIQ's "Go-Get Requests" (*see* § III.D.); and (3) clarify that if Circana or its representatives are or become aware of responsive documents, Circana must produce them.

Dated: June 16, 2025

Respectfully submitted,

By: /s/ *Sartouk H. Moussavi*

THOMPSON COBURN LLP
Michael A. Parks, Il. Bar No. 6217230
Sartouk H. Moussavi, Il. Bar No. 6313554
Brendan M. Bement, Il. Bar No. 6338045
55 E. Monroe Street, 37th Floor
Chicago, Illinois 60603
P: (312) 346-7500, F: (312) 580-2201
mparks@thompsoncoburn.com
smoussavi@thompsoncoburn.com
bbement@thompsoncoburn.com

Matthew A. Braunel, Il. Bar No. 6276394
Justin P. Mulligan, Il. Bar No. 6319388
One US Bank Plaza
St. Louis, MO 63101
P: (314) 552-6000, F: (314) 552-7000
mbraunel@thompsoncoburn.com
jmulligan@thompsoncoburn.com

KELLOGG HANSEN TODD FIGEL & FREDERICK PLLC
John Thorne (*pro hac vice*)
James M. Webster (*pro hac vice*)
Joseph S. Hall (*pro hac vice*)
1615 M Street, NW, Suite 400
Washington, DC 20036
P: (202) 326-7900, F: (202) 326-7999
jthorne@kellogghansen.com
jwebster@kellogghansen.com
jhall@kellogghansen.com

*Attorneys for Plaintiff Nielsen Consumer LLC*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Plaintiff has compiled with the meet and confer requirement of Local Rule 37.2. Counsel exchanged multiple written communications and had meet-and-confer videoconferences, including on March 21, 2025 at 2:00 p.m. CT (for Plaintiff's counsel: Justin Mulligan, Sartouk Moussavi, Steven Heinrich; for Defendant's counsel: Neil Gilman, Daniel Stefany, Michael Mueller, Brianne Enoma) and May 1, 2025 at 2:00 p.m. CT (for Plaintiff's counsel: Justin Mulligan, Sartouk Moussavi, Brendan Bement; for Defendant's counsel: Daniel Stefany, Neil Gilman, Michael Mueller, Brianne Enoma), but were unable to resolve their differences regarding the issues identified herein.

*/s/ Sartouk Moussavi*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on June 16 2025.

*/s/ Sartouk Moussavi*